**UNITED STATES of America**

v.

**Peter J. GIANARIS, Nicholas J. Gianaris.**

**Crim. No. 76–782.**

United States District Court, District of Columbia.

Oct. 14, 1977.

---

Peter O. Mueller, Asst. U. S. Atty., Washington, D. C., for the U. S.

Roger E. Zuckerman, James F. Lyons, John E. Drury, Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The United States of America and defendants Peter J. Gianaris and Nicholas J. Gianaris submitted this case to the Court for trial on a stipulated record of Count II of the indictment returned by the Grand Jury on December 21, 1976. The stipulated record, signed by both defendants, their counsel, and counsel for the Government, was submitted to the Court on September 29, 1977, and the Court took the matter under advisement at that time.

Count II of the indictment, the only charge now before the Court, alleges:

> From on or about the first day of September 1974, the exact day being to the Grand Jury unknown, and continuously thereafter up to and including the 11th day of March 1975, in the District of Columbia and elsewhere, PETER J. GIANARIS, NICHOLAS J. GIANARIS [and seven other named individuals], defendants herein, and others known and unknown to the Grand Jury did conduct, finance, manage, supervise, direct and own all and part of an illegal gambling business, to wit, a sports bookmaking business in violation of Section 1508, Title 22, District of Columbia Code; said gambling operation being in substantially continuous operation for a period in excess of thirty (30) days, and having a gross revenue of two thousand dollars ($2,000) or more on one or more single days, involving five or more persons in its conduct, financing, management, supervision, direction and ownership.
>
> (In violation of Title 18, United States Code, Section 1955 and 2.)

Upon consideration of the stipulated record presented to the Court, and after comparing the evidence contained therein with Count II of the indictment, the Court noted that the dates of the alleged offense in Count II—September 1, 1974 to March 11, 1975—appeared to be at variance with both the proof tendered by the Government in

the stipulated record and with the dates contained in all five other counts in the December 21, 1976 indictment, as well as the dates contained in the supplemental indictment against defendants Peter J. Gianaris and Nicholas J. Gianaris on April 19, 1977.[1] On October 4, 1977, at the commencement of the scheduled hearing on that date, the Court notified the parties and their counsel of the apparent variance in dates. Until that time both the parties and their counsel were unaware of the apparent variance. Counsel for the government then advised the Court that the closing date alleged in Count II—March 11, 1975—was indeed at variance with the proof tendered herein and the dates in the other counts of the indictment(s)[2]. He further advised the Court that the closing date in Count II should have read, and was intended to read, March 11, 1976, and that the last digit of the year in the actual indictment was merely a typographical error.

Counsel for defendants Peter J. Gianaris and Nicholas J. Gianaris orally moved for the dismissal of Count II because of the error in the indictment. The Court will treat this motion as a motion for acquittal pursuant to Fed.R.Crim.P. 29, for the legal effect of both forms of motion is identical under the rather unusual circumstances of this case. The basis for defendants' motion is that the error in the indictment resulted in a *fatal variance* between the charge in Count II and the Government's proof.

This case is now, therefore, before the Court for a determination of how the error in the closing date alleged in Count II of the indictment affects this Court's consideration of the evidence tendered in the stipulated record with regard to Count II of the indictment. For the reasons stated herein, the Court concludes that the admittedly erroneous closing date set forth in Count II has not and will not prejudice the defendants, and the Court therefore will disregard the error pursuant to Fed.R.Crim.P. 52(a). The error is thus not a fatal variance and does *not* bar the Court from considering all the evidence in the stipulated record herein. Upon consideration of the entire stipulated record, the Court concludes that the Government's uncontroverted evidence proves beyond a reasonable doubt that the defendants, Peter J. Gianaris and Nicholas J. Gianaris, violated 18 U.S.C. § 1955, and each of the elements thereof, between the dates of September 1, 1974, and March 11, 1976, and the Court therefore will deny the defendants' motion for acquittal and will find the defendants guilty as charged with respect to Count II.

I. *Since Both Defendants Have At All Times Been Fully Apprised And Had Knowledge Of The Nature As Well As The Scope Of The Charge Against Them, And Since Neither Defendant Was In Any Way Prejudiced In His Preparation Of A Defense As A Result Of The Digital Error In The Indictment, The Court Will, Pursuant To Fed.R.Crim.P. 52(a), Disregard The Error And Consider All The Evidence Of Record Against The Defendants.*

It is settled beyond peradventure that not all variances between the charging terms of an indictment and the proof offered at trial are "fatal"; in other words, not every variance *requires* dismissal of the indictment or a verdict of acquittal. *See United States v. Eaton*, 501 F.2d 77, 79–80 (5th Cir. 1974). As the Supreme Court held in *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935):

1. Both the proof and the dates recited in the other counts focused on events in the late fall of 1975 and the winter of 1976 (i. e., November 1975 to February 1976).

2. The Court notes that the Government has since in writing argued that even if the closing date of March 11, 1975 is at variance with the bulk of the proof tendered herein, there is nevertheless sufficient evidence of the elements charged between September 1, 1974 and March 11, 1975 to warrant conviction of the defendants for violating 18 U.S.C. § 1955 between those dates. In other words, Government counsel's admission that the indictment contained an error was not intended as an admission that no conviction was sustainable for the shorter period of time actually charged.

The true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

Relying on this precedent, the Court of Appeals for this Circuit has stated that the "accepted rule is that a variance does not call for dismissal of the indictment *except upon a showing of prejudice.*" *Gaither v. United States*, 134 U.S.App.D.C. 154, 165, 413 F.2d 1061, 1072 (1969) (emphasis added).[3]

█ There can be no doubt that neither of the defendants has suffered any prejudice whatsoever by the digital error in Count II of the indictment. The courts that have confronted cases similar to the instant one have focused on two interrelated considerations in determining whether an error in the indictment prejudiced the defendant and thereby warranted dismissal of the indictment. These considerations are: (1) whether the defendant was apprised and had knowledge of the nature of the charge against him; and (2) whether the defendant was prejudiced in the preparation of his defense by the error in the indictment. Consideration of both of these factors demonstrates conclusively that the defendants herein have not been prejudiced by the error in the closing date in Count II of the instant indictment.

*First*, defendants have at all times known that the crime(s) with which they were charged were based on their activities during the fall of 1975 and the winter of 1976, and they were therefore at no time misled into believing that the Government relied on evidence of their activities only until March 11, *1975.* The indictment itself compels this conclusion: As indicated above, Counts I, III, IV, V, and VI of the December 21, 1976, indictment, and the supplemental April 19, 1977, indictment, all charge the defendants with crimes arising out of their gambling operations during the fall of 1975 and the winter of 1976. In particular, the allegations contained in Count I conclusively demonstrate the scope and duration of the criminal activities alleged by the Government as the basis for Count II. Count I charges, *inter alia*, a conspiracy among the defendants and others to violate 18 U.S.C. § 1955, which is the identical statute upon which Count II is based. The duration of this alleged conspiracy was from September 1, 1974, to *March 11, 1976*; thus, defendants were from the outset of this prosecution apprised that their alleged violation of 18 U.S.C. § 1955 was claimed to have continued through March 11, 1976. Moreover, if there were any doubt in the defendants' minds as to whether the March 11, 1976, date in Count I was a mistake, an examination of the forty-five (45) overt acts alleged by the Government as the basis for the conspiracy charge, all of which are alleged to have occurred in the fall of 1975 and/or the winter of 1976, manifestly demonstrates the nature and extent of the Government's charge against them. Finally, the defendants during this case were afforded complete discovery of the Government's evidence, and they therefore had complete knowledge at all times of the actual case against them which focused on their gambling operations in the fall of 1975 and the winter of 1976.

---

**3.** While the *Gaither* court noted that the Supreme Court limited the "accepted rule" somewhat in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), that limitation was interpreted to extend *only* to variances "substantial enough to amount to a constructive amendment of the indictment." It is clear that the mere substitution of the year 1976 for the year 1975 would not, in the circumstances of this case, be such a substantial change since the date (or dates) of the alleged violation of 18 U.S.C. § 1955 is not a *material* element of that crime. *See Ledbetter v. United States*, 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed. 1162 (1898); C. Wright & A. Miller, *Federal Practice and Procedure—Criminal* § 125, at 247 (1969).

These particular facts provide the strongest possible basis for concluding that the defendants have not been prejudiced as a result of the digital error in Count II. As the Eighth Circuit has held in a similar case wherein the indictment included an erroneous date:

> [The defendant] was at all times fully aware of the actual date of the commission of the alleged wrongful act and could not have been prejudiced in any substantial rights by the amendment, since the mere correction of the date did not in any manner broaden the charge.

*Stewart v. United States,* 395 F.2d 484, 488 (8th Cir. 1968). *Accord, United States v. Buble,* 440 F.2d 405 (9th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1971). *See also Robertson v. United States,* 168 F.2d 294, 295 (5th Cir. 1948); *Myles v. United States,* 170 F.2d 443, 445–46 (5th Cir. 1948).

*Second,* defendants were in no way prejudiced in their preparation of a defense in the instant case. In this regard, the instant case is factually analagous to *Gregory v. United States,* 364 F.2d 210 (10th Cir.), *cert. denied,* 385 U.S. 962, 87 S.Ct. 405, 17 L.Ed.2d 307 (1966). As in the present case, the indictment in *Gregory* contained a digital error in the date of the alleged crime. In affirming the defendant's conviction (and rejecting his argument for reversal because of the mistake in the indictment), the court of appeals said:

> Generally, a well-founded fatal variance objection is based upon a date which occurred after the indictment has been returned or so far before the date of the indictment as to clearly indicate the availability of a limitations defense in the cause. The appellant having offered no evidence in defense of the charge, it is difficult to determine how he could have been prejudiced.

364 F.2d at 213. As in *Gregory,* there is no indication here that the defendants have been prejudiced since the "corrected date" is neither after the return of the indictment nor "so far before the date of the indictment as to clearly indicate the availability of a limitations defense." Moreover, the defendants, herein, like the defendant in *Gregory,* have offered no evidence in their defense. Since the defendants in this case, without introducing any evidence in their own behalf, have chosen to be tried by the Court on a stipulated record of the evidence that the Government has against them, it cannot seriously be argued that they have been prejudiced in the preparation of their defense.

There is also no doubt that the defendants will not be prejudiced by the digital error in the indictment by way of a subsequent prosecution for the same offense. *See Berger v. United States, quoted supra.* It is well-established that the defendants cannot be prosecuted in the future for their alleged illegal activities in the fall of 1975 and the winter of 1976 by virtue of the typographical error here involved and that this would have to be determined by consideration of the *entire record* of this case, and not by a consideration of the indictment standing alone. *See Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Clay v. United States,* 326 F.2d 196, 198 (9th Cir. 1963). Thus, the typographical error in the closing date of Count II of the indictment will not subject defendants to any increased exposure to re-prosecution.

In conclusion, the defendants herein have not been and will not be prejudiced by the error in the last digit of the closing date of Count II—which should have read 1976 rather than 1975. The holding of *Lucas v. United States,* 88 U.S.App.D.C. 160, 188 F.2d 627, decided by the Court of Appeals for this Circuit in 1951, provides an appropriate summation to this Court's holding herein. In *Lucas,* the indictment charged criminal activities on August 17, *1950,* whereas the proof established the commission of the alleged crime on August 17, *1949.* In affirming the defendant's conviction notwithstanding the erroneous date in the indictment, the Court held:

> We think the case comes within Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A., to the effect that "Any

error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." This Rule, as here applied, does not offend the Fifth Amendment. It is apparent from what has been said that there was no prejudice to substantial rights; and since the error was clerical the indictment did not fail to meet the requirements of a statement of the essential facts constituting the offense. Rule 7(c).

188 F.2d at 628. *Accord, United States v. Zambito,* 315 F.2d 266, 269 (4th Cir. 1963), *cert. denied,* 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423 (1963).

II. *Upon Consideration Of The Entire Stipulated Record, The Court Concludes That The Government's Uncontroverted Evidence Proves Beyond A Reasonable Doubt That Both Defendants, Peter J. Gianaris And Nicholas J. Gianaris, Are Guilty As Charged By Count II Of The Indictment Of Violating 18 U.S.C. § 1955.*

As noted above, the parties submitted this case for trial by the Court on a stipulated record. That record contains the Government's evidence with regard to Count II of the indictment returned by the Grand Jury on December 21, 1976. Count II, which is quoted above, charges the defendants with violating 18 U.S.C. § 1955.

Section 1955 of Title 18 requires the Government to prove *each* of the following four elements beyond a reasonable doubt: *First,* the Government must prove that the defendants conducted, financed, managed, supervised, directed, or owned all or part of a gambling operation; *Second,* the Government must prove that said gambling operation was conducted in violation of the law of the state or the political subdivision in which the operation was conducted; *Third,* the government must prove that said gambling operation involved five or more persons who conducted, financed, managed, supervised, directed, or owned all or part of the operation; and *Fourth* and finally, the Government must prove that said gambling operation was or remained in substantially continuous operation for a period in excess of thirty (30) days *or* has a gross revenue of two thousand dollars ($2,000) in any single day.

The evidence in the stipulated record demonstrates conclusively and beyond any reasonable doubt that the defendants are guilty of all these elements. The Government's uncontroverted evidence proves beyond a reasonable doubt that both Peter J. Gianaris and Nicholas J. Gianaris conducted, financed, managed, supervised, directed, *and* owned all or part of a gambling operation during the fall of 1975 and the winter of 1976. The Government's evidence also proves beyond a reasonable doubt that this gambling operation was conducted in the District of Columbia in violation of 22 D.C. Code § 1508 (1973), which provides:

It shall be unlawful for any person, or association of persons, within the District of Columbia . . . to make or place a bet or wager, accept a bet or wager, gamble or make books or pools on the result of any athletic contest. For the purpose of this section, the term "athletic contest" means any of the following, wherever held or to be held: a football, baseball, softball, basketball, hockey, or polo game, or a tennis, golf, or wrestling match, or a tennis or golf tournament, a prize fight or boxing match, or a trotting or running race of horses, or a running race of dogs, or any other athletic or sporting event or contest.

In the present case, the Government's uncontroverted evidence proves beyond a reasonable doubt that the defendants accepted bets and wagers *and* gambled and made book within the District of Columbia on both football and basketball games throughout various parts of the country.

The Government's uncontroverted evidence also proves beyond a reasonable doubt that no less than seven (7) individuals were involved in the conduct of the gambling operation conducted, financed, managed, supervised, directed and owned by the defendants, and which operation violated 22 D.C. Code § 1508. Finally, the Government's uncontroverted evidence proves beyond a reasonable doubt that said gambling

operation *both* remained in substantially continuous operation for a period of at least several months. *and* grossed more than $2,000 of revenue on a number of single days.

Accordingly, and by virtue of the foregoing, the Court finds both Peter J. Gianaris and Nicholas J. Gianaris guilty beyond a reasonable doubt in Count II of the Indictment for violating 18 U.S.C. § 1955, and, the Court, therefore, must deny defendants' motion to dismiss or for a judgment of acquittal.